RALPH B. GUY, JR.,
dissenting.
I respectfully dissent. In Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court stated that on appellate review a summary judgment should be upheld “[wjhere the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.” This is the quintessential example of such a case.
Although in my view plaintiffs pro se claims are nothing short of preposterous, that is not the test. A “judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [plaintiff] on the evidence presented.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is the application of this standard that informs my dissent.
According to plaintiff, in 1973, her husband, in her presence, purchased for $395 a gold wedding ring which she now alleges contained a 2.35 carat pink diamond. The original sales slip for this purchase is part of the record. There is no indication on the sales slip as to size or color of the diamond nor did the salesmen make any representations about the diamond.[1]
On August 5, 2002, some 29 years later, plaintiff took the ring to a Robinson Jewelers for sizing. When she returned on August 13, 2002, to pick up the ring, plaintiff complained that the ring did not contain its original diamond claiming that the diamond now in the ring was “too small” and that it “sparkled,” “splattered,” and “glittered” too much. Nothing was said about the original diamond being pink. Plaintiff refused to take the ring home, but returned on August 18, 2002. On this date plaintiff now complained that the diamond had been switched again and was not the same diamond that was in the ring on August 13. On both occasions plaintiff was informed that all rings brought in for work are cleaned by machine which restores their original sparkle. This time, plaintiff left with the ring, again not making any reference to a pink diamond.
Later in 2002, the plaintiff contacted the Attorney General’s office, the local police, and an attorney, none of whom pursued this matter. In the initial report to the police, plaintiff mentioned nothing about a pink diamond, but two-and-a-half years later, in 2005, she submitted an “update” to the police, and for the first time mentioned the diamond was pink. Two months later she filed this pro se complaint in a Michigan state court alleging that a 2.35 carat, pink diamond had been taken from her ring and replaced with a smaller white stone. Defendant removed the case to a federal court, where after referral to a magistrate judge, summary judgment was granted to defendant and this pro se appeal followed.
I.
Although I disagree with the majority’s analysis of the evidentiary issues, even if *243 plaintiffs “evidence” is deemed admissible she still cannot prevail. By focusing only on the evidentiary rulings, the court misses the overarching principle of what is necessary for a plaintiff to defeat a well-pleaded motion for summary judgment. In the district court the defendant’s motion for summary judgment framed the issue as whether taking the record as a whole, any “rational trier of fact could find for plaintiff. ...” An examination of the record taken as a whole demonstrates that no rational juror could make such a finding.
The first document in the record is plaintiffs complaint. Although some leeway is given to pro se pleadings, the rambling lengthy narrative filed by plaintiff is long on emotion but short on plausibility. The allegation that a large national jeweler would have sold her a rare, pink 2.35 carat diamond for $395.00, which the complaint says is now worth something between $440,000 and $800,000 per carat, sets a tone for the complaint which makes what follows largely irrelevant. Although this was not a Fed.R.Civ.P. Rule 12(b)(6) motion filed by the defendant, the relatively recent decisions by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, — U.S. -, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), make it clear that there must be pleaded “enough facts to state a claim to relief that is plausible on its face.” Twombly, 550 U.S. at 570, 127 S.Ct. 1955. In the companion case of Iqbal, Justice Kennedy wrote that judges must use their “judicial experience and common sense” in determining plausibility. Iqbal, 129 S.Ct. at 1950. Although Twombly and Iqbal were decided under the more rigorous standard for dismissal of Rule 12(b)(6), the principle articulated certainly permeates summary judgment proceedings unless the more fully developed record would take the plaintiff across the plausibility threshold. With that in mind, an examination of what the record does show is enlightening.
To begin with, and certainly very damaging to plaintiffs claims, is that her husband, who purchased the ring and saw it regularly for 29 years states that it looks like the same ring he originally purchased.
Second, the ring itself belies plaintiffs claim. In her complaint she states; “I read the inscription [in the ring] many times 235 (carat # — her insertion) 14k (gold-her insertion) ‘Starfire’ the name of my pink diamond.” Unfortunately for plaintiff the ring inscription is 235 — not 2.35' — and “Starfire” is descriptive of a diamond that “sparkled” and “glittered,” exactly the characteristics that plaintiff says her original diamond did not have. More importantly, however, defendant’s expert, Martin Fuller, who examined plaintiffs ring, provides the full and unrefuted provenance of the ring in question. Mr. Fuller’s credentials are not only very impressive as a general matter, but significantly, some are directly relevant to this case. We learn from Mr. Fuller, inter alia, the following:
A. Plaintiffs ring is a standard “Carioca” ring manufactured by Keepsake Jewelers as part of its Starfire line. This is a line of small diamonds mass marketed to the lower end of the diamond-ring market. The suggested selling price for this line of diamonds was $350 to $750. The diamond currently in plaintiffs ring shows that it was cut consistent with diamond cutting practices of 1973 and was the type of diamond mounted in Starfire rings of that era. In addition to his expertise, Mr. Fuller from 1970 through 1974 sold Keepsake rings, including rings from the Starfire line.
B. The stone currently in plaintiffs ring reveals that it was cut manually, which was the standard process used in *244 the 1970s. Today diamonds are cut by computer-driven machines, and the diamond allegedly substituted into plaintiffs ring was not produced by the more modern procedure.
C. A 2.35 carat diamond would have a diameter more than twice the size of the one in plaintiffs ring. The “head” or “crown” (prongs) of plaintiffs ring could not accommodate a 2.35 carat diamond. Additionally, a 2.35 carat diamond would have been of a size that would have obscured the small diamonds and rubies which bracketed the principal diamond.
D. To remove and replace a diamond in plaintiffs ring would have required the use of a torch and resoldering. The rubies would have to have been removed to protect them from the heat of the torch, and the white gold scrolling which holds the rubies and small diamonds in place would have been damaged.
E. The head of plaintiffs ring is original and has never been changed. Plaintiff makes no claim that the ring itself is other than the original.
F. A 2.35 carat natural fancy pink diamond would be a rarity in today’s market and would have been even more uncommon in 1973.
G. Colored diamonds are valued according to their modifying colors and subtle differences in color can have a great impact on value. That is why so-called pink diamonds are classified as Fancy Light Pink, Fancy Intense Pink, Fancy Vivid Pink, and Fancy Dark Pink. Since the ring that plaintiff purchased was covered by a warranty, the sales slip would have had to list more particulars about the nature of the diamond purchased if it was other than the garden variety, small diamond used in the Keepsake line of rings.
H. The “235” inscription in plaintiffs ring is a reference to a style number.
Fuller’s report actually contains many other facts damaging to plaintiffs allegations, but the above represents some of his most compelling findings. Also, it is important to note that Mr. Fuller was not given a hypothetical and then opined, as is often the case with experts, but rather he was “hands on” and his conclusions are derived from his observations of plaintiffs ring, buttressed by his many years of experience with this exact type of ring.
Against this tsunami of expert evidence, what has plaintiff offered? The nature and quality of plaintiffs evidence is exemplified by the following excerpt from her deposition:
Q. Can you — What I’m looking for here is the name of anyone who would have seen you with that ring on. Can you think of any names of people who would have seen you with that ring?
A. I really don’t right now.
Q. As you sit here today can you think of one person who saw this ring prior to the time that you dropped it off at J.B. Robinson?
A. Who had seen it years back or whatever?
Q. At any point from the time that you acquired it to the time that you dropped it off at J.B. Robinson. As you sit here today can you think of one person?
A. Well, my — It should be my relatives. I have — -Let me check. Could I check that and bring that in to you?
Q. Sure.
Q. We would — Sterling would request that you supplement your Responses today to the extent necessary and, specifically, request the name of any individual to whom you showed this ring prior to the time that you dropped it off at J.B. Robinson.
A. Now, I don’t know exactly about showing — well, okay.
*245 Q. Any person who saw this ring prior to the time that you dropped it off at J.B. Robinson.
A. All right. I’m sure I can find some people that probably had seen it at some point in time prior. Okay.
Now, I’m hoping this is all on here so I can go back and then I can say, okay, I need to get this for you.
Plaintiff did not supply any names as she promised and defendant filed interrogatories seeking the same information. Specifically, the plaintiff was asked to identify “any person who saw the diamond ring referenced in your complaint between the time it was given to you and August, 2002.” Two months elapsed and then plaintiffs only reply was to object to the interrogatories and provide no additional information. When plaintiff finally responded she stated, under oath: “Plaintiff was not able to locate any person at this time many are deceased.”
Apparently recognizing that in 30-plus years someone must have noticed this allegedly huge pink ring, plaintiff submitted three affidavits which are essentially what the majority rely upon in reversing the summary judgment granted by the district court. The two affidavits each of Essie and Willie Washington are identical in their language and barren in detail. The first two Washington affidavits are dated November 18, 2005, and are handwritten, obviously by the same hand. They read in their entirety: “the diamond in the ring is not the same diamond, it is different from the one that she brought [sic], it was a pink diamond.” Apparently recognizing the complete inadequacy of these affidavits, plaintiff had the Washingtons sign two other identical affidavits dated July 18, 2008, which was shortly after defendant filed its motion for summary judgment. In their entirety, these affidavits stated:
1. Her ring was a Pink Diamond Ring.
2. I had picture with her and the Ring.
3. The dress and Stone both was Pink.
4. At the end of July the both was here in Rockford 111. with picture and the Ring.
5. I have had the picture in Rockford in 1973 — July or Aug.
Whether the language is not artful by design or otherwise, the key fact is that their sworn allegations are made on the basis of an alleged photo of the ring, not the ring itself. Although a claim is made that the Washingtons actually saw the ring, that fact cannot be ascertained from their affidavits.
The third affidavit, that of Ann Marie L. Easley, is, at least, in proper affidavit form and purports to set forth some basis for the observation of the affiant. The magistrate judge and the district judge appropriately did not consider this affidavit for procedural reasons. As set forth above, although defendant made repeated efforts to compel plaintiff to identify anyone who might have seen the ring that she intended to rely upon in support of her claim, as can be seen, plaintiff identified no one. Although she was named on plaintiffs witness list, she was never identified as a person who could testify about the nature and color of the ring even though she was a bridesmaid at plaintiffs wedding. In the same vein, although Easley is not offered specifically as an expert, her affidavit suggests she is one by referring to herself as a “jewelry aficionado.” Plaintiff actually did consult an expert, but elected not to use him and, in fact, attempted to disqualify him.
Even if, despite the failure of plaintiff to respond to clear and unambiguous discovery requests, one were to consider the affidavit of Easley, what of evidentiary significance does it say? Other than saying that plaintiff and her husband are nice folks, the only relevant thing the affidavit *246 contains is her statement that sometime in the 80’s she looked at plaintiffs ring — in her words:
to determine if I could see a pool (watery) effect at the bottom of her stone. By moving closer to the garage (better lighting), I remember for a fact, that the diamond was the same one that she was married in. It was blush (pinkish) colored and eye clean. The stone was a non brilliant cut like a cabochon.
There are several problems with these statements. First, although a self-styled “jewelry aficionado” she clearly would not qualify as an expert, at least on the basis of what is in the record. Yet as the magistrate and the district judge both noted, getting into the grading of diamonds and talking about trying to see a pool at the bottom of the diamond and stating it was a “non brilliant cut like a cabochon” goes far beyond what the rules contemplate relative to the admissibility of lay witness opinion testimony.
What is significant about the Easley affidavit is what it does not say — particularly that she has seen the ring plaintiff now has and knows it is not the ring she had at her wedding. Certainly, this “jewelry aficionado” would be the one plaintiff would turn to for that comparison. Nor does she say anything that would support the diamond being 2.35 carats in size. The one incident that Easley’s affidavit recites that relates to color was that on one occasion two decades ago, the stone appeared to have a “blush (pinkish)” cast to it. This viewing was apparently at night since the affidavit states to see the ring she “moved closer to the garage (better lighting).”
Even if one gives full credit to the Easley affidavit, it must be read in light of the testimony by the accredited expert — Fuller. This does not require a weighing or otherwise-impermissible evaluation of the record. If a plaintiffs complaint and a supporting witness’s affidavit state that the moon is made of green cheese and an affidavit by Neil Armstrong says that it is not, there has not been a fact question created that would make it error to grant a summary judgment. The analysis is the same as that which would be made at the conclusion of a trial if the judge was considering a motion for judgment as a matter of law. In a summary judgment setting, the nonmoving party must go beyond the pleading and
by affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial. Thus, the non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its complaint to defeat the motion for summary judgment.
Moore v. Philip Morris Cos., 8 F.3d 335, 339-340 (6th Cir.1993) (internal quotation marks and citations omitted).
There is no probative evidence in this case that would support a finding that in 1973 plaintiff purchased a 2.35 carat, rare pink diamond for the $395.00, now claimed to have a value of hundreds of thousands of dollars. There is even less to support the claim that whatever ring she brought in, regardless of the nature of the diamond, had been altered and another diamond substituted. As was stated in Anderson v. Liberty Lobby, Inc., “there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.” Id. at 249-50, 106 S.Ct. 2505 (citations omitted).
I would affirm the summary judgment.

. The name of the jewelers from whom the diamond was purchased was Hatfield Jewelers. Plaintiffs complaint refers to J.B. Robinson Jewelers, and defendant refers to itself as Sterling Jewelers indicating J.B. Robinson is a trade name of Sterling Jewelers. There is no dispute, however, that all three are interrelated and defendant does not question that J.B. Robinson is a properly named defendant. For ease of reference the defendant will be referred to as "Robinson.”